## APPOINTMENT OF GUARDIANS OF ESTATES.

Probate Court of Knox County.

IN THE MATTER OF THE APPLICATION FOR THE APPOINTMENT OF A GUARDIAN FOR JACOB GREER, AN ALLEGED INCOMPE-
TENT PERSON.

Decided, December 21, 1921.

*Guardian and Ward—Appeal from Order Appointing Guardian of Es-*
*tate—Motives of Those Asking Appointment for an Aged Person will*
*be Inquired into—Jurisdiction of Probate Court where Domicile*
*of Ward is Changed.*

1. On appeal of an application for appointment of a guardian, the entire case goes up, and gives the court jurisdiction to determine that a guardian is required for the estate only, and to make such an appointment or to direct that it be made.

2. The motives of persons applying for appointment of a guardian for an aged man will be inquired into, and the peaceful enjoyment by him of freedom in person and estate will not be interfered with, unless his best interests require it.

3. Where a guardian of the estate, but not of the person of such a man. has been appointed, and he afterward in good faith and while competent so to do changes his residence to another jurisdiction, the probate court of the county where the appointment was made looses jurisdiction over him as soon as such change of residence

DUKE, J.

The question of whether or not a guardian should be appointed for the said Jacob Greer, an alleged incompetent person, is submitted to the court upon evidence, the burden being upon the persons making the application to establish by satisfactory proof that a guardian should be appointed. The jurisdictional facts of residence and notice must be fully established.

One thing that the court should always look at, and that is the motive of the person or persons who are seeking the appointment of a guardian for an aged man. The court will always guard with great care the aged man from interference in the peaceful enjoyment of his person and estate.

One of the most delicate of the many duties pertaining to the office of probate judge is that of making a finding upon the application of guardianship for an aged man. When the person's incapacity is clearly shown, no difficulty is encountered, but where the line of demarkation between sufficient and insufficient understanding is exceedingly fine, then the court will weigh with more precision the evidence.

A mere weakness of mind is not sufficient to justify an order of appointment when the decree is not necessary for the protection of the person or property, and especially is this true when there is a guardian of the estate. The court should always be fully satisfied that the interests of the aged man, regardless of the desires of any one else, require the appointment to be made before a finding to that effect is entered.

In reference to the first appointment of a guardian for said Jacob Greer, by the probate court of this county, the court is of the opinion that when the appeal from said appointment was taken to the court of common pleas, the entire case went up, and the court of common pleas had all the power that was lodged in the probate court originally, and that this necessarily included the power to appoint or direct the appointment of a guardian for estate only, which was ordered, and Clinton M. Rice of Danville, Ohio, was appointed guardian of the estate only.

The testimony of Mr. Rice shows that he has at no time since his appointment exercised any control or management over the person of the said Jacob Greer.

This court finds from 128 S. W., 632, that the Court of Appeals of Texas held that an insane person, with a guardian of his property, but not of his person, may in good faith change his residence; and also the same holding by the Supreme Court of Massachusetts, in 20th N. E., 305.

The old domicile is not lost or gone until a new one is acquired. It is not, however, necessary that the purpose to acquire a new residence should exist at the time of removal. It may be formed afterward. A residence may be acquired by one who has re-

moved to a place for temporary purposes only, by a change of purpose, and an election of the new habitation or place of abode as his place of future domicile or home.

In such a case the old home would be gone, and the new one acquired from the point of time when the intention to adopt the new residence was determined upon and fixed. It is not even then necessary that he should intend to remain there for all time.

The question before the court is one of jurisdiction, and also whether Jacob Greer, when he went to Auglaize county, Ohio, or at any time since, had sufficient mental capacity to choose his place of abode, and this question is one of fact, and must be determined by the preponderance of evidence favoring one place as against another.

While the testimony of Dr. Jefferson and Dr. Harmer, would indicate at the time Jacob Greer left Danville, Ohio, to go to Auglaize county, Ohio, he was suffering from some mental lesion, the testimony of Dr. J. E. Bayliff of Uniopolis, Auglaize county, Ohio, who has been his family physician ever since his going to said Auglaize county, or for more than two years, and Dr. Roy C. Hunter of Wapakoneta, Ohio, who attended Mr. Greer upon several occasions, would indicate to the court that his mental and physical condition was good for an old gentleman.

The testimony of the Doctor's Bayliff and Hunter, together with sundry witnesses, being a preponderance of the evidence introduced, would indicate and the court is of the opinion that Jacob Greer was possessed of sufficient mental capacity to choose his own residence, and in fact did do so, and voted in Auglaize county, Ohio, at the last general election. The court is, therefore, of the opinion that it has no jurisdiction.